IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

ZIA AGRICULTURAL CONSULTING, LLC.

      Plaintiff,

    v.                              No. 1:20-cv-445-KWR-JHR

TYSON FOODS, INC, and
TYSON FRESH MEATS, INC.,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**THIS MATTER** comes before the Court upon Defendants' Tyson Foods, Inc. (Tyson Foods) and Tyson Fresh Meats, Inc. (Tyson Fresh Meats) Motion to Dismiss for Failure to State a Claim (as to Tyson Foods) and Lack of Personal Jurisdiction (as to both Defendants), filed on June 19, 2020. **Doc. 9**. Having considered the parties' briefing, the record of the case and the applicable law, the Court denies the Motion to Dismiss at this time and orders jurisdictional discovery with respect to Tyson Foods' alleged involvement and whether the Court has specific jurisdiction over the company.

I.      **FACTS**

Plaintiff Zia Agricultural Consulting, LLC is a New Mexico corporation specializing in the production and "finishing" of premium cattle[1]. Plaintiff claims that the strict standards for production of premium cattle result in a more costly "finishing" process, " *i.e.*, feeding, bringing [the cattle] up to weight, providing medical care, and otherwise preparing the cattle for market."

_____

[1] According to Plaintiff, "premium cattle" refers to producing "Global Animal Partnership-certified Cattle and Non-Hormone Treated Cattle". **Doc. 19 at 4.**

**Doc 19 at 4.** Plaintiff alleges that Defendants[2] sought it out in particular due to the parties' prior business relationship and Plaintiff's reputation for producing high quality, premium cattle. **Compl., ¶¶ 12-13**. Plaintiff avers that Defendants contracted with it for the purposes of selling meats to Whole Foods, which had created a specially certified program that made it the only viable purchaser of Plaintiff's finished product. **Id., ¶ 14**. Specifically, Plaintiff claims that in December 2018 or January 2019 it was contacted via "multiple telephone calls" by Defendants' employee, Robert Scherer (Scherer), to discuss the possible production and sale of premium cattle to Defendants for eventual sale to Whole Foods. **Id., ¶¶ 19, 22**. Plaintiff states that following Scherer's inquiry, it emailed him a "Cost Plus" model, which included projected costs for finishing the cattle. **Id., ¶¶ 23-24**.  Plaintiff alleges that Scherer accepted the offer by email on the same day, stating "This looks good get them in a finish yard, asap please." **Id, ¶ 27**.

Based on the alleged agreement, Plaintiff states that it sent several thousand cattle to four feed lots in New Mexico and kept Defendants apprised of the cattle's progress by email throughout the year, providing updated herd numbers and cattle movements from pasture to feed yard, with various delivery dates. **Id, ¶¶  29-30**. In March 2019, Plaintiff allegedly contacted Scherer and another of Defendants' employees, Justin Nelson (Nelson), who confirmed the Cost Plus Contract and requested adjusted delivery dates for the cattle. **Id., ¶ 39**. In May 2019, Plaintiff claims it attempted to reach Scherer, leaving multiple voicemails, to confirm shipping dates to a facility in Nebraska for harvesting. **Id, ¶ 41**. The Complaint provides that in early June, Scherer and Nelson called Plaintiff and informed Defendants that they would not be paying the prices agreed upon. **Id., ¶ 42**.  The Complaint also details alleged mismanagement and delay by Defendants in the supply chain throughout the process, which Plaintiff claims resulted in additional expense and loss

---

[2] Plaintiff asserts its allegations collectively against Defendants.

of cattle. *Id.*, **¶¶ 45-49**.  Furthermore, Plaintiff asserts that Defendants deliberately attempted to interfere with Plaintiff's business in New Mexico by contacting ranchers, feed yards and competitors in efforts to cut Plaintiff out of deals.  *Id.*, **¶¶ 58**.

Plaintiff has filed claims for breach of contract, breach of implied duty of good faith and fair dealing, quantum meruit, fraudulent misrepresentation and violation of the New Mexico Unfair Trade Practices Act (UPA) seeking damages of not less than $2,488,000.

**The Parties' Conflicting Evidence**

The parties proffer conflicting affidavits and exhibits in support of their respective positions. The Court provides a brief review of what those include.

A.      **Affidavit of Robert Scherer**

Scherer states that he is the "Director of Procurement for Tyson Fresh Meats, Inc." and that based on his role he is the most knowledgeable source of information regarding dealings between Tyson Fresh Meats and Plaintiff. **Doc. 9-1, Ex. 1 Scherer Affid. ¶ 2-3.** Scherer testifies that he is "aware of no interactions at any time applicable to the subject of the present litigation between [Plaintiff] and Tyson Foods, Inc. ("Tyson Foods")." *Id.*, **¶ 4.** He states that during the relevant period of email communication between himself, and other Tyson Fresh Meats representatives, with Plaintiff, neither he nor any other Tyson Fresh Meats or Tyson Foods employee named in the Complaint was physically present in New Mexico in connection with the alleged transaction. *Id.* Scherer says that none of the cattle involved in the "proposed or suggested transactions" were ever owned by Tyson's Fresh Meats until they reached feed yards outside of New Mexico and that no formal contract was ever formed with Plaintiff. *Id.*, **¶¶ 4-5.** He insists that no negotiations related to these alleged transactions between Plaintiff and Tysons Fresh Foods and/or Tyson Foods took

place in New Mexico and that when Plaintiff suggested coming to South Dakota to discuss the proposals, "they were asked not to bother coming." ***Id***., ¶ **5.**

### B.    Affidavit of Brett Worlow

Defendants annex the affidavit of Brett Worlow, Chief Counsel and Assistant Secretary of Tyson Foods. **Doc. 9-2, Ex. 2 Worlow Affid. ¶ 2.** Worlow is also Assistant Secretary of Tyson Fresh Meats. ***Id***., ¶ **4.** Worlow testifies that Tyson Foods is a Delaware corporation with its principal place of business in South Dakota and that Tyson Fresh Meats is a subsidiary of Tyson Foods. ***Id***., ¶¶ **3-4.** He asserts that Tyson Fresh Meats is not registered to do business in New Mexico, does not maintain an office or any other physical presence in the state, does not have employees in New Mexico and does not have any bank accounts or property there. ***Id***., ¶ **5.** He says the same for Tyson Foods, with the exception of whether it is registered to do business in New Mexico. ***Id***., ¶ **3.**

### C.    Declaration of Narciso Perez

Plaintiff proffers the declaration of Narciso Perez, its "Chief of Cattle Feeding Operations and General Consultant for [Plaintiff]." **Doc. 19-2, Perez Decl. ¶ 2.** Perez avers that Plaintiff has sold cattle to "Tyson representatives," and met with him in New Mexico to discuss such transactions "for many years." ***Id***., ¶ **3.** He names "Tyson representative" employees to include Scherer, Nelson, "their boss" Kevin Heuser, and Brad Brandenburg. ***Id.*** He varyingly characterizes them as employees of Tyson Foods, Tyson, and Tyson Foods, Inc. ***Id.*** He notes that such was his relationship with Heuser that he agreed, at Heuser's request, to hire Heuser's nephew as an intern at Plaintiff's Albuquerque office. ***Id.*** Perez testifies that he is "not aware of any Tyson representatives from a separate entity called Tyson Fresh Meats. Rather, the individuals I have communicated with have all represented Tyson. For many years [Plaintiff] has been selling Tyson

cattle for Tyson's special beef programs, including, but not limited to, the Whole Foods Global Animal Partnership-certified program." ***Id*. ¶ 4.**  He describes how Scherer called him "several times" in December 2018 or January 2019 to inquire about how many Global Animal Partnership cattle, which he terms "premium cattle," Tyson could purchase. ***Id*., ¶ 5.** He states that Scherer knew Plaintiff was a New Mexico company, having visited him in the state previously to discuss other cattle transactions, and that Scherer was currently interested in purchasing "as many prime and high choice Premium Cattle" as Plaintiff could provide so that he could make a deal with Whole Foods. ***Id*.**  Perez avers that Scherer then called him multiple times during the ensuing process to discuss terms of a supply chain agreement. ***Id*.**

In their discussions, Perez told Scherer that some of the cattle would be sourced in New Mexico, that the cost of finishing premium cattle was substantially higher than regular cattle, and that on February 4, 2019, the parties entered into a "Cost Plus Contract" wherein Tyson agreed to pay $125 per head of Global Animal Partnership premium cattle and $100 per head for premium "Non-Hormone" treated cattle. ***Id*. ¶¶ 6-7.** Perez details the process of preparing the cattle and the ensuing breakdown in the parties' relationship.[3] He also provides a specific example of Defendants' efforts to interfere with Plaintiff's business, stating that "on one occasion, Mr. Scherer traveled by car to New Mexico to meet with one of Zia's customers and interfere with Zia's deal." ***Id*., ¶ 11.** Lastly, he notes that on another occasion, Scherer went to Texas to inspect some of Plaintiff's cattle, which had originated in New Mexico. ***Id*.**

### D.    Plaintiff's Additional Exhibits

Plaintiff provides a series of exhibits in its Opposition Brief (**Doc. 19-1, Exs. 1-5**) to demonstrate the connection between Tyson Foods and Tyson Fresh Meats. The exhibits include

---

[3] The Court has provided a description in the preceding Background section and does not repeat it here but notes that Perez has testified to the same.

the following:  (1) A copy of Scherer's LinkedIn profile page, which displays his work title as "Director of Procurement for Tyson Foods, Inc.," without mention of Tyson Fresh Meats; (2) Information from a 2019 Stakeholder's Summit listing Nelson as Vice President of Procurement at Tysons Foods, Inc., with a weblink to the panel; (3) A document with Nelson as a guest speaker in 2018 with the same title; (4) A copy of New Mexico Secretary of State Corporations and Business Services information page listing Tyson Foods, Inc. as a registered, active entity in New Mexico, and (5) A page from Tyson Foods' website claiming to be "the largest U.S. food company."

## II.     Legal Standard

### A.      Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the Complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.      Standard for 12(b)(2) Motion to Dismiss

Motions to dismiss under 12(b)(2) test the bounds of personal jurisdiction against the defendant. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *AST Sports Science Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). When a pre-trial motion to dismiss is considered by the court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1057 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). The plaintiff can satisfy this burden by "demonstrating, via affidavits or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* This showing is "light." *Wenz*

7

*v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In determining whether the requisite showing has been made, all factual disputes are resolved in the plaintiff's favor and, if uncontroverted by the defendant's affidavits, the well-pled factual allegations in the Complaint must be taken as true. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d at 1503; *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."). "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Wenz v. Memery Crystal,* 55 F.3d at 1508 (internal citation omitted). As neither party has requested a hearing, the Court will rule upon the papers.

New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 132 N.M. 312, 316 (2002); *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492–93 (10th Cir. 2012). The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process. Due process requires that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Old*

*Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

<u>**General and Specific Jurisdiction**</u>

A defendant's contacts with the forum state can result in either general or specific jurisdiction. "General jurisdiction" arises if a defendant's contacts with New Mexico were so "continuous and systematic" that the court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). The other type of personal jurisdiction is "specific jurisdiction," such that the cause of action arises from a particular transaction of business or commission of a tortious act in which the defendant "purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Romero v. TitleMax of New Mexico, Inc.*, 2020 WL 4547294, at *2 (D.N.M. Aug. 6, 2020) (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

**III.**   <u>**Defendants' Motion to Dismiss**</u>

In this motion, Defendants contend that this Court lacks personal jurisdiction over both Tyson Foods and Tyson Fresh Meats because the Complaint fails to allege sufficient facts from which the Court may plausibly infer that personal jurisdiction over them exists in New Mexico. Defendants argue that Tyson Foods is not a proper party to the action because Plaintiff misleadingly refers to it and Tyson Fresh Meats collectively in the Complaint as "Tyson Defendants," yet Tyson Foods is distinct corporate entity and had no involvement in the alleged business with Plaintiff. **Doc. 9 at 10**. Defendants further fault Plaintiff for not conducting an individual, jurisdictional forum contacts analysis for each Defendant, and, with respect to Tyson Foods, claim that "Plaintiff has alleged no evidence whatsoever of Tyson Foods' contacts with this

forum with respect to the Complaint's alleged but disputed arrangements between itself and Tyson Fresh Meats." *Id.* **at 11.**

In the alternative, Tyson Fresh Meats suggests the Court transfer the action against it to the U.S. District Court for the District of South Dakota pursuant to 28 U.S.C. § 1631 should the Court conclude that personal jurisdiction does not exist but elect not to dismiss the action. *Id.* **at 1.**

**The Court Denies Defendants' 12(b)(6) Motion**

Defendants argue that Plaintiff makes conclusory and generalized allegations against "Tyson Defendants" which are insufficient to establish jurisdiction over Tyson Foods, pointing to ¶¶ 6 and 7 in the Complaint which refer to "Tyson Defendants" collectively and state that each allegation against "Tyson Defendants" is alleged fully against each individual entity.

While the Court agrees with Defendants that Plaintiff could have been more specific about the facts pertaining to each Defendant, the Court finds that at this stage there is sufficient factual description of the allegedly injurious conduct by Defendants to warrant denial of their motion pursuant to 12(b)(6).  Reviewing the allegations in the light most favorable to Plaintiff, while it acknowledges that the extent of the connection and "overlap" between Tyson Foods and Tyson Fresh Meats is unknown at this early stage of the action, the Court concludes that the Complaint plausibly alleges that it engaged in business with "Tyson Defendants," and that the employees with whom Plaintiff was involved in discussions with are employed by "Tyson Defendants." **Compl., ¶¶ 10, 14, 19, 39**. Thus, to the extent the complaint is somewhat lacking in individual specificity, it is not enough to grant Defendants' motion on that basis. The motion with respect to personal jurisdiction under 12(b)(2) warrants further scrutiny.

A.      **General Jurisdiction**

For general jurisdiction to exist, the plaintiff must meet a more stringent test of demonstrating that defendant has contacts with the forum State that are "so continuous and systematic as to render the [foreign corporation] essentially at home in the forum state." *Goodyear Dunlop Tires Ops. V. Brown*, 564 U.S. 519, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). The instant claim need not be related to those contacts. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008). Courts have considered several factors in assessing the relative strength of a defendant's contacts with a forum, such as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d at 1533.

### The Parties' Assertions

Defendants contend that the Court lacks general jurisdiction over both Tyson Fresh Meats and Tyson Foods. They argue that Plaintiff offers no individual factual analysis regarding Tyson Foods' contacts with New Mexico other than asserting a parent-subsidiary relationship between it and Tyson Fresh Meats, while Plaintiff's Complaint relates only to its business arrangement with Tyson Fresh Meats.  **Doc. 9 at 11.**

Defendants first claim that the Court lacks general jurisdiction over Tyson Fresh Meats because the jurisdictional inquiry extends beyond whether a defendant's contacts are "continuous and systematic" to whether it is "essentially at home" in New Mexico, which they argue is not the case.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) ("Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense

11

"continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."). Defendants liken the instant action to *Lopez v. Delta Int'l Mach. Corp.* (2016 WL 1408152 (D.N.M. Mar. 15, 2016)). In *Lopez*, the Court concluded that a Minnesota corporation with its principal place of business in Maryland was not subject to general jurisdiction in New Mexico. ***Id*. at \*1.**[4] In granting the motion to dismiss, the Court found significant that the defendant had no local offices, employees or registered agents, did not maintain bank accounts, lease property, or pay taxes in the state and that the plaintiff had not submitting any evidence of defendant's volume of sales in New Mexico. ***Id*.** at \*13.

Defendants argue that the instant situation mirrors *Lopez* for both Tyson Fresh Meats and Tyson Foods. Defendants point out that Tyson Fresh Meats is not registered to do business in New Mexico, and has no office, employees, property or bank accounts in the state. **Doc. 9 at 13.** Similarly, Defendants argue that Tyson Foods, a Delaware corporation with its principal place of business in Arkansas, "is not essentially at home" in New Mexico, without an office, employees, bank accounts or property here. ***Id*. at 13-14.**

Plaintiff's opposition counters that Tyson Foods' "ongoing business dealing in New Mexico" including its longstanding business relationship with Plaintiff" is sufficient to meet the minimum contacts requirement to establish general jurisdiction. **Doc. 19 at 19.** Plaintiff states that Tyson Foods is "a national food production, processing, sales, and marketing company doing business throughout the U.S., including in New Mexico," and notes that it is registered to do business in New Mexico. **Doc. 19 at 1, 19.** Plaintiff asserts that the Complaint sufficiently alleges

---

[4] The Court granted the motion to dismiss without prejudice, permitting Plaintiff to re-file his claims against Delta Machinery if he obtains additional evidence of personal jurisdiction by New Mexico over Delta Machinery. *Lopez v. Delta Int'l Mach. Corp.*, 2016 WL 1408152, at \*1 (D.N.M. Mar. 15, 2016).

that Plaintiff has conducted business for years with Tyson Foods. Plaintiff claims Tyson Foods representatives have visited the state to discuss cattle transactions with Plaintiff for many years, and that Defendants have not claimed that they do not conduct extensive business in New Mexico "for the purpose of realizing pecuniary profit." **Doc. 19 at 10** (citing *Plumbers Specialty Supply Co. v. Enter. Products Co.*, 1981-NMCA-083, ¶ 10 for the proposition that, "[Doing business" has been defined as doing a series of similar acts for the purpose of realizing a pecuniary profit, or otherwise accomplishing an object" and is sufficient to establish jurisdiction)).

With respect to Tyson Fresh Meats, Plaintiff claims that Defendants "shared a unity of corporate interest and operated as part of a single enterprise in furtherance of Defendants' breach of the Cost Plus Contract and commission of additional tortious acts directed toward a New Mexico company which caused harm in New Mexico." *Id.* **at 10.** Relying on *Alto Eldorado P'ship v. Amrep* (2005-NMCA-131, ¶ 33), a state court action in which the New Mexico Court of Appeals found such significant involvement and control by a foreign, parent corporation over its subsidiary that exercising personal jurisdiction over both was reasonable. Plaintiff argues that there is "extensive operational overlap" between the Tyson entities such the jurisdiction for both is appropriate. *Id.*

In their Reply, Defendants assert that Plaintiff has failed to explain how its "alter ego theory" applies to the instant action. **Doc. 20 at 2.** Arguing that the mere existence of a parent-subsidiary relationship is generally insufficient to establish general jurisdiction over a parent corporation, Defendants note that the only allegation of an "overlap" in the Complaint is Plaintiff's conclusory statement that "upon information and belief, Tyson Fresh Meats is an affiliate, subsidiary, department, division and/or brand name of Tyson [Foods]." Compl. ¶ 6. In response to Plaintiff's characterization of Tyson Foods as national in scope and business and Plaintiff's claim

that New Mexico therefore has jurisdiction over both Defendants on that basis, Defendants cite to binding caselaw that has rejected just such an argument. *See Daimler,* 571 U.S. at 137-38. ("*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums. Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' *That formulation, we hold, is unacceptably grasping*.") (emphasis added)). Lastly, while acknowledging that some jurisdictions have held that by registering to do business in a state a corporation may be consenting to general jurisdiction,  Defendants argue that registration alone does not render the party "essentially at home" in the state. **Doc. 20 at 6.** Defendants assert that the Tenth Circuit has yet to opine on whether consent by registration satisfies due process. *Id***.** Defendants do not deny that Tyson Foods is registered in the state but assert that Plaintiff's position is therefore inapplicable to Tyson Fresh Meats, which is not registered to do business in New Mexico. *Id***.**

### Whether the Court Has General Jurisdiction over Defendants

The Court holds that, even construing the evidence in the light most favorable to Plaintiff, the Court does not have general jurisdiction over the Defendants.

#### A.    Plaintiff's Well-Pled Facts Do Not Constitute Sufficient Basis for General Jurisdiction

Firstly, the Court concludes that, for the purposes of general jurisdiction, Plaintiff has not provided sufficient legal or factual support for its "unity of corporate interest" theory (**Doc. 19 at 10**), and its reliance upon *Alto Eldorado Partnership* is misplaced under the circumstances and facts presented to the Court at this time. While Plaintiff is correct that in *Alto Eldorado Partnership*, the New Mexico Court of Appeals extended personal jurisdiction over the parent

14

entity defendant due to its close operation with its subsidiary, Plaintiff fails to flesh out the facts of that case. In that action, the interconnectedness of the relationship between the parent and subsidiary corporation was clear cut; the relationship went well beyond sharing some corporate directors and officers. *Id*. at ¶ 10 (detailing several shared officers and employees). The New Mexico Court of Appeals noted that, among other things, the parent company, had a common payroll system with its subsidiaries, consolidated its annual reports and financial statements, the subsidiary held its annual meetings in the parent company's corporate office, the sale of the subsidiary's assets, the election of its president and discussion of a loan agreement for the subsidiary all appeared in the parent company's minutes, not in its own. *Id*. at ¶¶ 11, 14. Such was the connection between the two entities that the New Mexico Court of Appeals found that "[the] Plaintiffs made a prima facie case that [the parent company] did not simply own [the subsidiary]; *it completely controlled it to the point where* [subsidiary] *existed as little more than an instrument to serve* [the parent company's] *real estate interests*." *Id*. at ¶ 33.[5]

Here, Plaintiff offers some evidence that Defendants share commonalities, such as that Brett Worlow holds positions with both Defendants and that Plaintiff was never advised that they were doing business with Tyson Fresh Meats, merely "Tyson." ***Id*.; *See* Doc. 19-1, Exs. 1-5** (detailing alleged Tyson Fresh Meats officers named in the Complaint advertising their positions on LinkedIn or in conferences as Tyson Foods' employees). However, Plaintiff's conclusory allegations that Defendants therefore share a corporate unity of interest falls well short of the facts of the case upon which Plaintiff relies and is insufficient, without more, to warrant application of

---

[5] The New Mexico Court of Appeals extensively analyzed the foundation and applicability of the "alter ego" theory to due process requirements with respect to personal jurisdiction and how it is "not a substitute for a minimum contacts" analysis. *Id*. at ¶¶ 25-28. Here, the Court will not include such a discussion because Plaintiff's action is distinguishable and Plaintiff has failed to bolster its position with sufficient factual or case analysis for general jurisdiction.

general jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (holding that Plaintiff's allegation that "there is an overlap of current and former officers and directors of [the Defendants]—an overlap that actually consists of one common officer—is insufficient proof.").

The Court also notes that, while not dispositive, Plaintiff has failed to address Defendants' arguments elicited with respect to *Lopez*, which the Court found persuasive albeit nonbinding. *Lopez v. Delta Int'l Mach. Corp.*, 2016 WL 1408152, at *1 (D.N.M. Mar. 15, 2016). Considering *Lopez* and the relevant jurisdictional factors supplied in *Trierweiler*, neither Tyson Fresh Meats nor Tyson Foods have New Mexico offices or local agents through which they solicit business; beyond conclusory statements Plaintiff has not provided sufficient evidence that either corporation sends agents frequently into the state to solicit business; neither defendant has property or holds bank accounts in the state, and Plaintiff has not provided the volume of business conducted by either party in the state other than a general statement that Tyson Foods is a nationwide supplier of products. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d at 1533. While Plaintiff correctly notes that Tyson Foods is registered to do business in the state of New Mexico, it has provided no caselaw supporting that this fact alone meets the standard for general jurisdiction, nor has the Court found binding authority that this is dispositive for the purpose of general jurisdiction.

The Court is troubled by Plaintiff's jurisdictional arguments and the factual basis upon which it relies because it is largely premised upon a combined forum contacts analysis against Tyson Foods and Tyson Fresh Meats rather than an independent assessment. *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) (finding that although the parties' relationship "may be significant in evaluating their ties to the forum," there must nevertheless be jurisdictional showing as to each defendant.); *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually").

The Court feels that absent further specificity as to the connection between Tyson Foods and its subsidiary Tyson Fresh Meats, which Plaintiff acknowledges it lacks at this time (**Doc. 19 at 3 fn. 1**), general assertions of business dealings "for many years" and unspecified numbers of visits to New Mexico to discuss business is not enough to make a prima facie case for general jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1246–47 (10th Cir. 2011) ("Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there… '[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits.'") (internal citation omitted); *See also Benton v. Cameco Corp.*, 375 F.3d at 1081 (finding that two dozen transactions over eight years was insufficient to demonstrate "continuous and systematic general business contacts).

### Tyson Foods' National Status is Insufficient for General Jurisdiction

The Court disagrees with Plaintiff that Tyson Foods' national status with products circulated throughout the country, including in New Mexico, subjects it (and Tyson Fresh Meats) to general jurisdiction. As Defendants correctly assert, this type of argument has been expressly rejected by the United States Supreme Court. *See Daimler AG v. Bauman*, 571 U.S. at 138–39. The Court's finding comports with New Mexico state courts, which mirror the federal stance on personal jurisdiction. *See e.g. Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 14, 304 P.3d 18, 24 (applying *Goodyear* and state law precedent to find that the sale of the defendant's product in New Mexico and " 'mere purchases' of goods by customers in New Mexico, 'even if occurring at regular intervals, are not enough to warrant a[s]tate's assertion of *in personam jurisdiction* over a nonresident corporation *in a cause of action not related to those purchase transactions.*' ") (internal citations omitted) (emphasis in original). Accordingly, the Court concludes that Plaintiff

has not met its burden to show "systematic and continuous" contacts such that either Tyson Foods or Tyson Fresh Meats is "essentially at home in the forum" for the purpose of general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. at 919 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945).

### Whether the Court has Specific Jurisdiction over Defendants

"Specific jurisdiction…is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d at 1078. Specific jurisdiction requires that a plaintiff show that the defendant "purposefully directed [its] activities at residents of the forum, and the litigation [that] results from alleged injuries 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1090–91 (citing *Burger King Corp.*, 471 U.S. at 472). The Court considers whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  If the Court finds this to be the case, it must next consider "whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice." *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1276–77 (10th Cir.2005). "This latter inquiry requires a determination of whether the district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings,* 149 F.3d at 1091.

Defendants argue that Plaintiff's breach of contract claim is not enough on its own to establish sufficient minimum contacts for specific jurisdiction. **Doc. 9 at 14.** They assert that there is no specific jurisdiction because the alleged transactions between Plaintiff and Tyson Fresh

Meats were not negotiated or executed in New Mexico and that, although not dispositive, the fact that no agent or representative of Defendants entered the state to further the transaction and the fact that Plaintiff suggested a meeting in South Dakota, Tyson Fresh Meats principal place of business, favors finding that Defendants have not purposeful availed themselves of the forum. **Id. at 15.** Citing *Rambo v. Am. S. Ins. Co.* (839 F.2d 1415, 1418 (10th Cir. 1988)), Defendants submit that the Court cannot base specific jurisdiction on "sporadic telephone calls and emails" sent from Tyson Fresh Meats representative to Plaintiff. **Id. at 16; Doc. 20 at 10.** Lastly, Defendants argue that Plaintiff's significant contacts and business in the forum state are not relevant for the Court's determination.

Defendants contrast the instant action with *Burger King v Rudzewicz*, where the Supreme Court exercised jurisdiction upon a finding that the defendant entered into a "carefully constructed," twenty year franchise agreement, "that envisioned continuing and wide-reaching contacts with [Plaintiff] in [the forum state]." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 480. Unlike *Burger King*, Defendants argue, no formal negotiations took place, there was no formal contract, "just a handful of emails exist which establish any sort of arrangement." **Id. at 18**. Lastly, Defendants assert that Plaintiff's fraud and UPA claims are insufficient to merit jurisdiction, and that the alleged injurious activity was incidental to the forum location. **Id. at 19**. They posit that Defendants' alleged connection to the forum state was merely "random, fortuitous or attenuated" because Tyson Fresh Meats did not accept ownership of the cattle until it reached feed yards outside of New Mexico. **Id. at 20. *See Walden v. Fiore***, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State. *Burger King,* 471 U.S., at 475, 105 S.Ct. 2174.").

19

Plaintiff contends, among other things, that there are sufficient minimum contacts to establish specific jurisdiction based upon Defendants' purposefully directing activity toward the New Mexico market, its continued maintenance of a business relationship with Plaintiff, and its misconduct resulting in harm in New Mexico. **Doc. 19 at 11.** Plaintiff avers that the Tenth Circuit has found specific jurisdiction exists in cases with "even fewer contacts" than those alleged in the Complaint. *Id*. **at 12.**

### B.    The Court has Specific Jurisdiction over Defendant Tyson Fresh Meats

For a defendant to avail itself to personal jurisdiction, the plaintiff must establish "not only that the defendant[ ] foresaw (or knew) that the effects of [its] conduct would be felt in the forum state, but also that the defendant[ ] undertook intentional actions that were expressly aimed at that forum state." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d at 1077. Once purposeful direction towards a forum state is established, it is presumptively not unreasonable to require a defendant to submit to the burdens of litigation in that forum. *See Burger King Corp.*, 471 U.S. at 476 ("Where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there."). Here, resolving factual disputes in favor of Plaintiff, the Court finds that it has specific jurisdiction over Tyson Fresh Meats.

In a breach of contract case the Court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Science,* 514 F.3d at 1058 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. at 479). Accepting Plaintiff's version of negotiations between the parties as true, resolving factual disputes in the conflicting affidavits in its favor, the Court finds that Tyson Fresh Meats purposefully availed itself of the opportunity to conduct business in the New Mexico forum, and that the alleged

20

damages in this action arise from or relate to those activities. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d at 1070; *Wenz v. Memery Crystal*, 55 F.3d at 1503.

Defendants' reliance upon *Rambo* is misplaced. In *Rambo*, the Supreme Court discussed the relevance of email and telephonic communication for the purposes of specific jurisdiction. Contrary to Defendants' argument, the Supreme Court expressly found that a limited number of emails or phone calls could indeed subject the party to jurisdiction..

> Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. *See Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1313–14 (10th Cir.1982). In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. *See Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."); *see also Anselmi v. Denver Post, Inc.,* 552 F.2d 316, 323 (10th Cir.), *cert. denied,* 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977); *Berrett v. Life Ins. Co. of the Southwest,* 623 F.Supp. 946, 950–51 (D.Utah 1985).

*Rambo v. Am. S. Ins. Co.*, 839 F.2d at 1418.

The Supreme Court qualified this position:

> However, the exercise of jurisdiction depends on the *nature* of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards. *See Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986) (plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), *cert. denied,* 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987); *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir.1985) ("ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state' ") (citation omitted), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) ("use of interstate facilities (telephone, the mail), ... are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process").

*Id*. at 1418–19 (emphasis in original).

In its discussion, the Supreme Court emphasized that the appropriate inquiry extends beyond this issue; the focal point is whether these contacts demonstrate purposeful availment of the forum by

the defendant. *Id*. at 1419-20. ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State…Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff.... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.")

Assessing the facts and evidence as pled in the Complaint and supplemented by the relevant exhibits in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a prima facie case under a purposeful direction theory. Plaintiff has a "longstanding" business relationship with Defendants. **Compl. ¶ 10.** Defendants' exhibits, including the testimony of Scherer, its employee most closely associated with these transactions, affirm that, at the very least, Tyson Fresh Meats was one of the entities involved in these transactions. **Doc. 9-1, Scherer Affid. ¶¶ 3-4;** *See also* **Doc. 19-2, Perez Decl.** ¶ 4. Scherer, who had worked with Plaintiff before, initiated contact on behalf of Tyson Fresh Meats to inquire into Plaintiff's ability to source as much premium cattle as possible to sell to Whole Foods, business which the company had engaged Plaintiff for previously**. Compl., ¶¶ 10, 13, 14, 19, 22; Doc. 19-2, Perez Decl. ¶ 5**.

The Court rejects Defendants' argument that the alleged agreement between the parties and the fact that Plaintiff and Defendants may have been partners for years is insufficient to establish specific jurisdiction. **Doc. 20 at 9-10.** The Court is not convinced by Defendants citation to non-binding caselaw. *Floodgate, Inc. v. Outsol, Inc.*, 2020 WL 1158283 (D. Colo. Mar. 10, 2020). Moreover, were the Court to entertain Defendants' arguments, Plaintiff alleges that Defendants deliberately interfered with its business, contacting ranchers, feed yards Scherer entered the state to interfere with its business contacts and try to cut it out by contacting feed yards ranchers, and

competitors to try to cut Plaintiff out of deals in New Mexico. **Compl., ¶ 58.** Perez testifies that, on one occasion, Scherer came to New Mexico expressly for that purpose. **Perez Decl., ¶ 11.** The Court deems the allegations that Defendants made an effort to cut Plaintiff out of deals with other New Mexico businesses, coupled with Defendants' longstanding business with Plaintiff and initiation of negotiations for the procurement of premium cattle here, sufficient to show that Defendant envisaged "continuing and wide-reaching" contacts with the forum state. *See Walden v. Fiore*, 571 U.S. 277, 285–86 (2014).

Contrary to Defendants' arguments, it is well established that physical presence in the forum state is not a prerequisite to exercise jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 476. ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). Thus, the fact that Tyson Fresh Meats (or Tyson Foods) may not have a consistent, physical presence in the state is not dispositive. The allegations in the Complaint, bolstered by the record, contradict Defendants' assertion that no representative ever entered New Mexico in connection with these purported transactions. **Compl., ¶ 58; Perez Decl. ¶ 11** (claiming that Scherer deliberately came to New Mexico to interfere with Plaintiff's business, attempting to cut it out of deals.). Having resolved this question in Plaintiff's favor as to Tyson Fresh Meats, the Court turns to whether exercise of personal jurisdiction would be reasonable under the circumstances.

### Whether the Exercise of Personal Jurisdiction is Reasonable

Even where a party has been shown to have minimum contacts with the forum state, these contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' " i.e., whether exercising

jurisdiction would be reasonable. *See Burger King Corp.,* 471 U.S. at 476. Requirements inherent in the concept of "'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if [a] defendant has purposefully engaged in forum activities." *Id*. at 477-78.

In determining whether the Court's exercise of personal jurisdiction is reasonable, the Court considers five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d at 1095. The strength of the five factors may militate toward establishing reasonableness of jurisdiction even with a lesser showing of minimum contacts, or it may demonstrate that even though minimum contacts exist, the factors are so weak that the Court should forego exercising jurisdiction as offending due process. *Id*. at 1095–96.

Preliminarily, the Court notes that beyond providing a list of these factors (**Doc. 9 at 9**), Defendants have not engaged in the required assessment. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d at 1080 ("… [W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (internal citation omitted).

### 1.  Burden on the Defendant

The first factor is generally given the most weight. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) ("[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction...."). In light of modern technology and methods of transportation, the Court has little trouble finding that the burden on Tyson Fresh Meats to litigate this action in New Mexico would

not be unduly burdensome. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474 (citing *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957) ("… because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.) (internal quotation omitted).  Tyson Fresh Meats is incorporated in Delaware with its principal place of business in South Dakota. Its representatives have not had difficulty traveling to New Mexico previously to review cattle and conduct business. Defendants' motion does not provide any reason it would be incapable of doing so for the purposes of this suit or indicated why it would be unlikely to obtain a fair trial in New Mexico. Thus, the Court concludes that having Defendant litigate the action in state would not be "gravely difficult and inconvenient." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 486.

### 2.  The Forum States' Interest

The Court finds that New Mexico has a strong interest in this action. Plaintiff is a New Mexico purveyor of cattle seeking redress for injuries it alleges occurred in state, caused by a foreign corporation. *OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d at 1096 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). Moreover, New Mexico law will likely apply to the breach of contract and UPA claims, as Plaintiff's injuries allegedly occurred in state. *See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1062 (10th Cir. 2008) ("The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law.")

### 3.  The Plaintiff's Interest in Convenient and Effective Relief

"This factor hinges on whether the [p]laintiff may receive convenient and effective relief in another forum." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d. at 1062. Plaintiff has an interest in seeking effective relief in its home state of New Mexico, which is well equipped to handle the suit. While it is certainly possible Plaintiff could receive equally effective relief in South Dakota, Defendants have not provided any reason why New Mexico courts would be problematic. Thus, the Court finds this factor, at worst, neutral.

### 4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor requires an inquiry into "whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d at 1097. Plaintiff claims that judicial economy weighs in favor of New Mexico because its witnesses are in the state "while Defendants' witnesses are spread across the mid-west in Arkansas." **Doc. 19 at 15.** Defendants aver, in their general arguments as to specific jurisdiction, that "the supposed obligations of Tyson Fresh Meats under the arrangement alleged by Plaintiff (which did not involve Tyson Foods) took place entirely outside of New Mexico" and that it did not take ownership of the cattle until it arrived in South Dakota, thereby rendering contacts with New Mexico "random, fortuitous or attenuated" **Doc. 9 at 18, 20. T**he Court construes the location of the alleged injuries in favor of Plaintiff. Defendants having failed to conduct the factorial analysis, the Court does not know for certain where their primary witnesses are situated but, for the sake of argument, presumes it to be South Dakota, Arkansas, or Nebraska. The Court agrees with Plaintiff that although Defendants suggest transfer of venue to South Dakota, they have not

demonstrated why it would be any less convenient to travel there from other locations. **Doc. 19 at 15.** Therefore, on balance, the Court finds this factor favors jurisdiction in New Mexico.

### 5. States' Interest in Furthering Fundamental Substantive Social Policies

The final factor focuses on the interests of New Mexico and South Dakota's interests in advancing fundamental substantive social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d at 1097. Plaintiff argues that New Mexico enacted the UPA to protect its citizens from deceptive business practices, as it alleges occurred here. **Doc. 19 at 16.** On the other hand, Defendants have not provided any indication whether and why South Dakota's social policy interest would be impacted, thus, the Court finds this factor favors Plaintiff.  Certainly, Defendants have not provided a "compelling case" that jurisdiction would be unreasonable or that New Mexico has any lesser interest than another forum. *Pro Axess, Inc. v. Orlux Distribution*, *Inc.*, 428 F.3d at 1280.

### The Court Will Permit Jurisdictional Discovery with Respect to Tyson Foods

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 Fed. Appx. 586, 589 (10th Cir. 2006); *Budde v. Ling–Temco–Vought, Inc*., 511 F.2d 1033, 1035 (10th Cir.1975). However, whether to grant jurisdictional discovery is a matter of discretion for the district court. *Id*. For the reasons previously discussed in this Memorandum with respect to a lack of general jurisdiction over Tyson Foods, the Court is unclear on Tyson Foods' connection to the action.  Plaintiff, however, indicates that it lacks the requisite information at this time as to the extent and nature of Tyson Foods' alleged connections and overlap with Tyson Fresh Meats. **Doc. 19 at 3.** It has proffered some evidence that Tyson Fresh Meats employees identify as employees of Tyson Foods and claims that it was never apprised that

it was doing business with Tyson Fresh Meats, just "Tyson." *Id.* **at 10.**  At this time, there are insufficient facts from which the Court can determine the nature, if any, of Tyson Foods involvement in these transactions and consequently whether specific jurisdiction exists. With additional factual inquiry Plaintiff may be able to show sufficient Tyson Foods contacts and involvement to satisfy due process under specific jurisdiction. Thus, the Court finds that the inquiry should continue on to an examination of whether Tyson Foods exercises such control over Tyson Fresh Meats or was so involved in these transactions so as to render it subject to specific jurisdiction. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 103 (10th Cir. 2012) ("'Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.' ").

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED** at this time.

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, **(Doc. 9)** is hereby **DENIED** at this time for reasons described in this Memorandum Opinion and Order**.**

**IT IS FURTHER ORDERED** that jurisdictional discovery is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FINALLY ORDERED** that this matter is referred to Magistrate Judge Ritter to determine discovery deadlines and handle discovery matters.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

28